UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>IDAHO HYPERBARICS, INC., as Plan Administrator of the Idaho Hyperbarics, Inc. Defined Benefit Plan,<br><br>      Defendant. | Case No. 4:16-cv-00325-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendant Idaho Hyperbarics, Inc.'s motion to dismiss the amended complaint filed by Pension Benefit Guaranty Corporation on September 8, 2016. The motion contends PBGC's claims against IHI are barred by the statute of limitations, 29 U.S.C. § 1303(e)(6). The Court conducted a hearing on March 1, 2017. After carefully considering the parties' arguments and the record before it, as well as the authorities cited by the parties, the Court issues this Memorandum Decision and Order denying IHI's motion.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND[1]

## 1. Factual Background

This action arises under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2012 & Supp. II 2014) (ERISA). PBGC brings this action under 29 U.S.C. § 1303(e)(1) to enforce the provisions of Title IV of ERISA, and to enforce a final agency determination that violations of Title IV occurred with respect to the IHI Defined Benefit Plan. This is an action for enforcement of PBGC's final agency determination based on a review of the agency's administrative record under 5 U.S.C. § 706.

PBGC is a wholly owned United States government corporation established under 29 U.S.C. § 1302 to administer and enforce the provisions of the plan-termination insurance program under Title IV of ERISA. 29 U.S.C. § 1301-1461. In this case, PBGC filed its complaint under Section 1303(e)(1) following IHI's standard termination of its single-employer, defined benefit pension plan. PBGC alleges IHI violated Title IV of ERISA and applicable regulations by failing to distribute Plan assets in full satisfaction of the Plan's benefit liabilities.

IHI's Plan was effective December 27, 2004, and established as an Internal Revenue Code (IRC) Section 412(i) plan, which is fully and solely funded through insurance companies. The insurance policy which funded the Plan was issued by MONY Life Insurance Company of America.

---

[1] For purposes of the motion to dismiss, the factual allegations in the Amended Complaint (Dkt. 9) are accepted as true.

On May 27, 2009, IHI filed a Form 500 with PBGC, with a proposed plan termination date of December 26, 2008. On November 15, 2010, IHI filed a Form 501 with PBGC, certifying all benefit liabilities under the Plan were satisfied, and that IHI paid a total of $575,900 to 15 plan participants no later than March 19, 2009, which date was more than two months before IHI filed the Form 500. On April 28, 2011, PBGC notified IHI that the Plan's standard termination had been selected for audit because, in violation of Title IV of ERISA, the Plan assets were distributed to participants before IHI filed the Form 500.

During the audit, IHI submitted documentation showing that a total of only $228,884 was distributed to participants, far less than the $575,900, reported on the Form 501 and the aggregate value of the cash surrender checks that MONY issued on March 29, 2009. During the audit, PBGC determined that, contrary to the information reported on the Form 501, two participants received no distribution, thirteen participants received their distributions between April 14, 2011, and May 5, 2011, two participants received their distributions on April 27, 2009, and one participant received her benefit on March 1, 2010. On July 15, 2014, upon completion of the Plan audit, PBGC issued its initial determination to IHI with respect to its audit (the "Initial Determination"). In the Initial Determination, PBGC found that IHI did not pay the Plan participants the full cash surrender value of their contracts, as required under the IRC.

PBGC made several findings in its Initial Determination, and required IHI to (a) calculate the underpayments due to participants by determining the difference between the amount each participant actually received and the full cash surrender value

**MEMORANDUM DECISION AND ORDER - 3**

of their annuity contract, adding a reasonable rate of interest to the additional amounts due; (b) submit such calculations for PBGC's review; and (c) pay participants the additional amounts due. On November 12, 2014, IHI requested reconsideration of PBGC's Initital Determination. On April 28, 2015, PBGC issued its Final Determination, which upheld its earlier findings. IHI has not, however, made any of the additional benefit payments to plan participants as required by the Initial Determination or Final Determination.

PBGC filed its complaint on July 21, 2016,[2] and later filed an amended complaint on August 25, 2016. Its claim for relief alleges IHI violated Title IV of ERISA and applicable regulations, by failing to distribute Plan assets in full satisfaction of the Plan's benefit liabilities. It seeks enforcement of its determinations, as well as distribution of any additional amounts, including interest, owed to plan participants.

## 2. ERISA Standards

In a standard termination under ERISA, the plan administrator must allocate and distribute assets to participants and beneficiaries in accordance with Title IV of ERISA. 29 U.S.C. § 1341(a)(1). Benefits are determined under the plan provisions in effect on the plan's termination date. 29 U.S.C. § 1341(b)(1)(D); 29 C.F.R. § 4041.8. Before distributing any plan assets, the plan administrator must send PBGC a "Standard Termination Notice – PBGC Form 500" ("Form 500") with information about plan assets and benefit liabilities. *See* 29 U.S.C. § 1341(b)(2)(A); 29 C.F.R. § 4041.25. PBGC then

---

[2] Six years prior to this date is July 1, 2010; Three years prior to this date is July 1, 2013.

**MEMORANDUM DECISION AND ORDER - 4**

has 60 days to determine whether there is any reason to believe that the plan is not sufficient for benefit liabilities. *See* 29 U.S.C. § 1341(b)(2)(C); 29 C.F.R. § 4041.26. Absent a finding from PBGC that the plan is not sufficient for benefit liabilities, the plan administrator must distribute plan assets in accordance with Title IV of ERISA within a specified time period. *See* 29 U.S.C. §§ 1341(b)(2)(D), 1341(b)(3); 29 C.F.R. § 4041.28.

In a standard termination, the plan administrator must distribute the plan's assets by (a) purchasing "irrevocable commitments" (i.e., annuities) from a private insurer to satisfy all benefit liabilities, or (b) making alternative forms of distribution (e.g., lump sum payments) "in accordance with the provisions of the plan and any applicable regulations." 29 U.S.C. §§ 1341(b)(3)(A)(i), (ii). Participants in an Internal Revenue Code ("IRC") Section 412(e)(3) plan, a plan which is fully and solely funded through insurance policies under 26 U.S.C. § 412(e), are entitled to the full cash surrender value of their insurance policies in a standard termination. A "majority owner" with respect to a corporate contributing sponsor of a single employer, defined benefit pension plan is an individual who owns 50 percent or more of the voting stock of the corporation or the value of all of the stock of the corporation. 29 C.F.R. § 4041.2.

A participant who is a majority owner may waive his accrued benefit under 29 C.F.R. § 4041.21(b)(2) "to the extent necessary to enable the plan to satisfy all other plan benefits liabilities . . . ." Absent a majority owner waiver, however, ERISA prohibits the assignment or alienation of a benefit. *See* 26 U.S.C. § 401(a)(13); 29 U.S.C. § 1056(d). Once plan assets are distributed, the plan administrator must file a "Post- Distribution Certification for Standard Termination – PBGC Form 501" ("Form 501"), attesting that

**MEMORANDUM DECISION AND ORDER - 5**

all benefits under the plan were paid in accordance with Title IV of ERISA. *See* 29 U.S.C. § 1341(b)(3)(B); 29 C.F.R. § 4041.29.

Following receipt of the Form 501, PBGC continues to have authority regarding matters relating to the plan under 29 U.S.C. § 1341(b)(4), and is required, under 29 U.S.C. § 1303(a), to audit a statistically significant number of standard terminations to determine if participants entitled to a benefit have received their full benefits under the terms of the plan. PBGC's audits are subject to review under PBGC's administrative review procedures. 29 C.F.R. §§ 4003.1(b)(3)(iii), 4003.21-4003.35.

Section 1303(e) permits PBGC to bring a civil enforcement action. The same section contains a limitations section:

> (A) Except as provided in subparagraph (C), an action under this subsection may not be brought after the later of—
> (i) 6 years after the date on which the cause of action arose, or
> (ii) 3 years after the applicable date specified in subparagraph (B).
> (B)(i) Except as provided in clause (ii), the applicable date specified in this subparagraph is the earliest date on which the corporation acquired or should have acquired actual knowledge of the existence of such cause of action.
> (ii) If the corporation brings the action as a trustee, the applicable date specified in this subparagraph is the date on which the corporation became a trustee with respect to the plan if such date is later than the date described in clause (i).
> (C) In the case of fraud or concealment, the period described in subparagraph (A)(ii) shall be extended to 6 years after the applicable date specified in subparagraph (B).

29 U.S.C. § 1303(e)(6).

## ANALYSIS

**1.      Motion to Dismiss Standard**

"To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir.2008), *as amended*, (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.2005). The Court of Appeals for the Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he is entitled to offer evidence to support the claims. *See Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc*., 375 F.3d 861, 866 n. 1 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

2. **ERISA Statute of Limitations**

IHI argues PBGC's complaint, filed on July 21, 2016, is untimely under Section 1303(e), because a violation arose on March 19, 2009, the date IHI paid plan participants, which date was more than two months prior to IHI's filing of Form 500. According to Section 1341, the plan administrator cannot pay participants prior to the filing of Form 500. Because that act constituted a violation of ERISA, IHI argues, under either the six year or the three year limitations period in Section 1303(e)(6), PBGC's complaint was untimely. IHI cites *PBGC v. Ferfolia Funeral Homes, Inc.*, 835 F.Supp.2d 416, 419 (N.D. Ohio 2011) in support, which IHI interprets as holding that the limitation period in Section 1303(e)(6) begins to run "when a violation of PBGC regulations occurs."

PBGC contends IHI's argument contradicts the language in Section 1303(e)(6), and fails because its complaint is based not upon the premature payment of plan benefits, but seeks to enforce PBGC's final determination that IHI did not pay participants their

full benefit liabilities as required under 29 U.S.C. § 1341. PBGC asserts also that IHI's reliance upon *Ferfolia* is misplaced.

The Court agrees IHI's argument is fundamentally flawed, both practically and logically. First, as a practical matter, PBGC was not made aware of the premature payment to plan participants until on or after November 15, 2010, when IHI filed Form 501, and stated therein that it paid plan participants on March 19, 2009. PBGC acknowledged IHI's premature payment on April 28, 2011, when it selected the Plan for audit on account of the distribution of assets to participants before IHI filed the Form 500. For IHI to argue that the statute of limitations began to run March 19, 2009, twenty months prior to April 28, 2011, the first date PBGC can be said to be aware of a violation, defies practical common sense. It is hornbook law that a cause of action generally arises when the plaintiff knew or should have known of a cause of action.

Seeming to recognize the absurdity of the argument, IHI changed its tune in its reply memorandum, contending PBGC's cause of action arose no later than March 22, 2010, the date IHI indicates it received a favorable determination from the IRS, thereby triggering its obligation to distribute plan assets, or April 28, 2011, the date PBGC selected the Plan for audit. Applying either of these alternative dates, IHI argues the limitations period expired before PBGC filed suit.

IHI's argument, however, fails to account for both the administrative process, and the express language of the statute. While it is true, in simplistic terms, to say that PBGC knew a technical violation had occurred once it realized IHI distributed plan assets prior to its filing of Form 500, until PBGC completed its audit and the regulatory enforcement

**MEMORANDUM DECISION AND ORDER - 9**

process, PBGC had not, and could not have, made any final determination of what, if any, substantive violations had actually occurred. To require PBGC to commit to a cause of action before undertaking an investigation would lead to absurd and unfounded results, as the Court will explain.

ERISA grants PBGC the power to regulate and enforce ERISA's provisions with regard to defined benefit pension plans. PBGC is equipped with the authority to conduct investigations, audits, and administrative hearings, and the power to bring an action to collect premiums, penalties, and interest via a civil enforcement action. 29 U.S.C. § 1303(a), (b), (e). Section 1303(e)(5) references "action[s] brought under this subchapter" with reference to bringing an action in Federal District Court. Similarly, Section 1303(e)(6), the limitations section, references "an action under this subsection," and refers to the date on which "the cause of action arose." The subsections clearly refer to a date certain—the date upon which PBGC could bring a civil enforcement action for relief. Such date did not arise until PBGC's investigative determinations (the Initial and Final) became final actions.

Here, PBGC's investigation, and resulting administrative proceedings, resulted in a finding of a violation for failure to distribute plan assets in full satisfaction of the Plan's benefit liabilities. That is the cause of action described in the complaint and amended

complaint. PBGC's Final Determination was issued on April 28, 2015, just over one year prior to the filing of the complaint in this case. PBGC's action was therefore timely.[3]

IHI's reliance upon *Ferfolia*, and its estoppel argument, is misplaced. In that case, Ferfolia filed its Form 500 and selected a termination date of July 14, 2003, for the standard termination. On April 29, 2005, Ferfolia distributed plan assets. On May 26, 2005, PBGC received a post distribution certification from Ferfolia indicating it had completed its standard termination of the plan and made distributions. Thereafter, PBGC selected the standard termination for a post-distribution audit. On June 28, 2006, PBGC issued an initial determination that Ferfolia's lump sum distributions were calculated improperly. On July 18, 2006, Ferfolia requested reconsideration. PBGC denied the request, and on August 21, 2006, issued a final determination affirming PBGC's determination that distributions were not made in accordance with applicable law. PBGC filed suit on March 21, 2011, to recover the additional distributions allegedly owed the plan participants and beneficiaries, similar to the lawsuit PBGC filed here.

Ferfolia filed a motion to dismiss, arguing the complaint was filed outside the statute of limitations in Section 1303(e)(6). Both parties agreed the 6-year limitations period applied, but disputed when the cause of action arose. PBGC argued the cause of action accrued when Ferfolia made distributions that were deficient and inconsistent with

---

[3] At the hearing, PBGC explained that, although it knew IHI had distributed plan assets prematurely and PBGC could have nullified the plan termination on that basis by rejecting IHI's Form 501, PBGC instead selected the Plan for audit and further investigation. It is the results of the investigation that led to the filing of the complaint in this case, and the cause of action seeks to recover benefits on behalf of the Plan participants. If the Court adopts IHI's argument under the facts of this case, it would lead to the absurdity of granting PBGC the statutory authority to conduct audits and investigations, on the one hand, but limit its remedy to nullifying plan termination on the other.

**MEMORANDUM DECISION AND ORDER - 11**

the information provided on the Form 500, which the court determined occurred on April 29, 2005. Ferfolia contends the cause of action arose on the plan termination date of July 14, 2003.

The court recognized that a cause of action does not become "complete and present" for limitations purposes until the plaintiff can file suit and obtain relief. 835 F.Supp.2d at 419 (citing *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 195 (1997)). The court therefore held that no violation occurred until Ferfolia made allegedly deficient distributions on April 29, 2005, because prior to that date, there was no violation over which PBGC could file suit. *Id.* The court held the statute of limitations is not triggered until some violation of ERISA or PBGC regulations occurs, "such as the unlawful distribution of deficient payments to plan participants." *Id.* at 420. The court therefore held PBGC's filing of its complaint on March 21, 2011, was timely in relation to the April 29, 2005 violation. *Id.* at 421.

Here, IHI seeks to hold PBGC accountable to a date that has no relation to the cause of action it has brought, and the violation it seeks to remedy. PBGC flagged the Plan's standard termination because of the premature distribution of assets. Upon investigation, PBGC acquired knowledge that IHI reported more distributions occurred than it actually distributed; and some plan participants did not receive the correct distributions. The results of the audit were reflected in PBGC's Initial Determination, dated July 15, 2014. Considering PBGC brought suit based upon the results of the audit (and not the premature distribution), and under the logic in *Ferfolia*, the earliest date

upon which PBGC's cause of action accrued was July 15, 2014. That date falls within the three-year limitations period in 29 U.S.C. § 1303(e)(6)(A).

Because the Court finds PBGC timely filed its complaint within the three-year limitations period of 29 U.S.C. § 1303(e)(6)(A), it finds it unnecessary to consider the parties' additional arguments concerning fraud, tolling, or the extension of the limitations period.

## CONCLUSION

For the foregoing reasons, IHI's motion to dismiss will be denied. PBGC's cause of action is based upon the results of its investigation finding IHI failed to pay plan participants benefits owed in connection with termination of its Plan. The earliest PBGC can be said to have acquired such knowledge is July 15, 2014, the date of its Initial Determination. IHI requested reconsideration of the Initial Determination, and PBGC issued its Final Determination on April 28, 2015. PBGC filed its complaint on July 21, 2016, within the three-year statutory limitations period.

# **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Dismiss (Dkt. 13) is **DENIED**.

2) The Court will conduct a telephonic scheduling conference for the purpose of resetting the case management deadlines. A separate notice of hearing will be forthcoming.

DATED: May 15, 2017

_____
Honorable Candy W. Dale
United States Magistrate Judge