UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, | Case No. 4:16-cv-00325-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| IDAHO HYPERBARICS, INC., as Plan Administrator of Idaho Hyperbarics, Inc. Defined Benefit Plan, | |
| Defendant. | |

## INTRODUCTION

This action arises under Title IV of the Employee Retirement Income Security

Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2012 & Supp. II 2014) (ERISA).

Pension Benefit Guaranty Corporation (PBGC) brings the action under 29 U.S.C. §

1303(e)(1) to enforce the provisions of Title IV of ERISA, and to enforce a final agency

determination that violations of Title IV occurred with respect to the Idaho Hyperbarics,

Inc. Defined Benefit Pension Plan (the "Plan") based on a review of the agency's

administrative record under 5 U.S.C. § 706.

Before the Court is PBGC's motion for summary judgment, requesting that the

Court uphold PBGC's administrative determination that Idaho Hyperbarics, Inc. (IHI)

failed to complete the standard termination of the Plan in accordance with the Plan's

provisions and under ERISA. PBGC contends the Administrative Record (AR) supports

its determination that IHI improperly reduced the benefits of approximately 17 Plan

participants by: (1) failing to pay Plan participants the full cash surrender value of their

Plan insurance contracts upon Plan termination as required under 26 U.S.C. §

411(b)(1)(F); (2) failing to pay the full amount of benefits elected by one of the

participants; (3) failing to vest certain Plan participants upon the Plan's termination as

required under 26 U.S.C. § 11(d)(3); and (4) improperly reducing of the benefits of Plan

participants who were not majority owners eligible to waive their benefits under 29

C.F.R. § 4041.2. PBGC contends over $370,000 in additional benefits are owed to Plan

participants.

IHI argues that a third party bears responsibility for any improper administration

of the Plan and its assets, and that if the Court finds in favor of PBGC, IHI likely will file

for bankruptcy, which is not in the plan participants' best interests.[1]

The Court conducted a hearing on May 1, 2018, at which the parties appeared.[2]

Having considered the record, the pleadings, relevant authority, and being fully advised,

---

[1] These same arguments were raised in support of IHI's motion to file a third party complaint, and are recast here within the framework of the Court's review under the Administrative Procedures Act (APA). The Court found IHI's arguments unavailing and denied IHI's motion to file a third party complaint, commenting that PGGC's claim against IHI arises under ERISA, and IHI cannot delegate fully its statutory responsibilities under ERISA; IHI's financial health, which exists independent of the Plan and its administration, is not ERISA's concern. Mem. Dec. and Order (Dkt. 50.)

[2] At the hearing, IHI conceded there is an amount of underpayment, and did not raise arguments in opposition to PBGC's motion other than what was presented in IHI's memorandum in opposition to PBGC's motion.

**MEMORANDUM DECISION AND ORDER  - 2**

the Court concludes PBGC's Final Determination was neither arbitrary nor capricious. Accordingly, the Court will grant PBGC's motion for summary judgment.

## FACTS[3]

PBGC is a wholly owned United States government corporation established under 29 U.S.C. § 1302 to administer and enforce the provisions of the plan-termination insurance program under Title IV of ERISA. 29 U.S.C. § 1302. IHI is a wound care and hyperbaric treatment provider incorporated in the State of Idaho. Am. Compl. ¶ 9; Ans. ¶ 9. IHI's primary place of business is in Pocatello, Idaho. *Id*.; Ans. ¶ 9. IHI adopted the Plan effective December 27, 2004. AR 39-67, 623-25, 684-757.

The Plan was a single-employer, defined benefit pension plan covered under Title IV of ERISA. AR 36-67, 74, 470-72, 291-92, 623-25, 697-794. The Plan was established as an IRC Section 412(i) plan, which is fully and solely funded through insurance policies. AR 181, 255-60, 1090-2052. The insurance policy which funded the Plan was issued by MONY Life Insurance Company of America ("MONY"). AR 181, 255-60, 1090-2052; Am. Compl. ¶ 23; Ans. ¶ 23. IHI was the Plan's contributing sponsor, within the meaning of 29 U.S.C. § 1301(a)(13), and the Plan administrator, within the meaning of 29 U.S.C. §§ 1002(16) and 1301(a)(1). AR 36-67, 74, 470-72, 291-92, 623-25, 697-794.

---

[3] PBGC submitted a statement of material facts in support of its motion, and IHI largely did not contest the facts other than contending paragraphs 8, 9, 11, 12, and 24 – 28 were not accurate summaries of the facts. The Court has reviewed the same, and to the extent clarification was required, the Court did so. However, IHI's requested clarifications did not present material changes.

On May 27, 2009, IHI filed a Form 500 with PBGC, with a proposed termination date of December 26, 2008. AR 1-5, 162-65. On November 15, 2010, IHI filed a Form 501 with PBGC, certifying that all benefit liabilities under the Plan were satisfied. AR 13-14. On the Form 501, IHI stated that it paid a total of $575,900 to fifteen Plan participants no later than March 19, 2009, more than two months before IHI filed the Form 500. *Id*.

On January 4, 2011, PBGC notified IHI that the Plan would be audited. AR 14. On April 28, 2011, PBGC issued an audit initiation letter to IHI, stating that the Plan's standard termination had been selected for audit because, in violation of Title IV of ERISA, Plan assets were distributed to participants before filing the Form 500. The letter also requested certain information for the audit. AR 15-16.

During the audit, PBGC determined that, contrary to the information reported on the Form 501, there were seventeen (rather than fifteen) Plan participants. AR 390-406, 474-490, 731-47, 981-82. Of those participants, two received no distribution, twelve received their distributions between April 14, 2011, and May 5, 2011; two received their distributions on April 27, 2009; and one received her benefit on March 1, 2010. AR 842-45, 963-67, 2054-60, 2063-81, 2175-76. All distributions were tendered after the date of proposed termination and March 19, 2009, the last date of distribution reported on the Form 501. AR 842-45, 963-67, 2054-60, 2080-81.

During the audit, IHI submitted documentation showing that, pursuant to its insurance policy surrender requests to MONY, IHI received $575,900 in insurance policy surrender checks from MONY on or about March 29, 2009. AR 321-34, 523-42, 2221-

MEMORANDUM DECISION AND ORDER - 4

50. Also, IHI submitted documentation showing that only a total of $228,884 was paid to the fifteen participants who did receive a distribution, less than the $575,900 aggregate value of the cash surrender checks from MONY and the total distribution amount reported on the Form 501. AR 826-45, 962-67, 2054-2060, 2080-81, 2175-76, 2221-50, 2263-78.

On July 15, 2014, upon completion of the Plan audit, PBGC issued its initial determination to IHI with respect to its audit (the "Initial Determination"). AR 2203-06. In the Initial Determination, PBGC found that IHI did not pay the Plan participants the full cash surrender value of their contracts, as required under IRC Section 411(b)(1)(F), because the total distribution amount to participants was only $228,884 – not the $575,900 that IHI certified that they distributed and less than the full cash surrender value of the participants' insurance contracts ("Finding 1"). AR 13, 826-45, 842- 45, 962-67, 2054-2060, 2080-81, 2175-76, 2203-06, 2221-35, 2263-78.

In the Initial Determination, PBGC found that, in addition to not receiving the full cash surrender value of his insurance contract, Participant A did not receive the full amount reported on his benefit election form and Form 1099-R ("Finding 2"). AR 2203-06. Participant A received only $6,346.62 when his insurance contract's full cash surrender value was $29,252.04, and the benefit amount that was reported on that participant's benefit election and Form 1099-R was $10,433.27. AR 820, 832, 962, 966, 971, 2203-06.

In the Initial Determination, PBGC found that two participants who terminated

employment before Plan termination, Participant B and Participant C (who IHI failed to account for on the Form 501), were not vested 100% in their benefits upon Plan termination as required by law ("Finding 3"). AR 288-90, 292-93, 495, 509, 656, 962, 1004-11, 1039-41, 2058-59, 2203-06.

In the Initial Determination, PBGC found that the benefits for non-majority owners had been incorrectly waived because IHI failed to submit evidence that the participants were majority owners eligible to waive benefits ("Finding 4"). AR 897, 2203-06.

Regarding Finding 1, Finding 2, and Finding 3, the Initial Determination required IHI to (a) calculate the underpayments due to participants by determining the difference between the amount each participant actually received and the full cash surrender value of their annuity contract and adding a reasonable rate of interest to the additional amounts due, (b) submit such calculations for PBGC's review, and (c) pay participants the additional amounts due. AR 2203-06.

Regarding Finding 4, the Initial Determination requested proof of majority ownership for participants that reportedly waived their benefit. *Id*. By letter dated November 12, 2014, IHI, through counsel, requested reconsideration of PBGC's Initial Determination and supplemented the request for reconsideration by an email dated March 3, 2015 (together, the "Reconsideration Request"). AR 2211-17, 2283-2326.

With respect to Finding 1, IHI argued that (a) because all premiums were paid as instructed by the Plan's actuary, the Plan should not be subject to IRC § 411; and (b) all available Plan assets were fairly distributed to participants, after taking out expenses and

MEMORANDUM DECISION AND ORDER  - 6

losses the Plan incurred. AR 2211-17, 2283-2326. The Reconsideration Request did not

dispute Finding 2. AR 2211-17, 2283-2326. Accordingly, Finding 2 became a final

determination on February 22, 2015. *See* 29 C.F.R. § 4003.22.

With regard to Finding 2, the Reconsideration Request stated that IHI would

forward to PBGC proof of a $2,000 payment allegedly accounting for the difference

between the benefit reported on Participant A's benefit election and Form 1099-R, and

the amount he received on Plan termination. AR 2211-17. To date, PBGC has received

no proof of the alleged $2,000 payment.

With respect to Finding 3, IHI argued that Participants B, C, and an additional

Participant E, should not be fully vested after leaving employment with IHI. AR 2211-17,

2283-2326.

The Reconsideration Request generally stated that some participants agreed to

receive a lesser benefit and, with regard to Finding 4, specified that Participant E had

agreed to such reduction but did not argue that Participant E was a majority owner

eligible to waive benefits. AR 2208, 2211, 2283-2326.

The Reconsideration Request did not dispute Finding 4 with respect to any other

participant. AR 2208, 2211, 2283-2326. Accordingly, with respect to all participants,

except Participant E, Finding 4 became a final determination on February 22, 2015. *See*

29 C.F.R. § 4003.22.

On April 28, 2015, PBGC issued its final determination ("Final Determination").

AR 2330-34. The Final Determination upheld Finding 1 on the grounds that, inter alia,

(1) IRC § 411(b)(1)(F) specifically requires that a participant's accrued benefit in a

**MEMORANDUM DECISION AND ORDER - 7**

412(e)(3) plan be at least the cash surrender value of their insurance contracts of any applicable date; (2) ERISA § 4041(b)(3) requires all benefit liabilities to be paid upon a standard termination and does not allow for expenses or losses by the plan to be deducted from a participant's benefits; and (3) IRC § 401(a)(2) and ERISA § 403(c)(1) require that Plan assets be used exclusively for the benefit of participants until all benefits liabilities are satisfied. *Id*. The Final Determination upheld Finding 3 on the grounds that IRC § 411(d)(3) requires that the non-vested portion of benefits of all affected participants, including terminated participants who have not yet incurred a five-year break in service, become non-forfeitable on the date of the Plan termination. *Id*.

The Final Determination upheld Finding 4 with respect to Participant E on the grounds that no documentation had been provided showing that Participant E waived her benefit or that she was a majority owner eligible to waive her benefit under 29 C.F.R. § 4041.2. *Id*. PBGC later filed suit to enforce the portion of its Initial Determination that became final on February 22, 2015, and its Final Determination on July 27, 2016, and amended its complaint on August 25, 2016. *See* Compl. and Am. Compl.

## ANALYSIS

### 1.    Standard of Review

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id*. at 248. The Court must be "guided by the substantive evidentiary standards that apply to the case." *Id*. at 255.

The PBGC is an administrative agency, and its decisions generally are reviewable under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551–559, 701–706. *See generally PBGC v. LTV Corp.*, 496 U.S. 633, 645–652 (1990); *Dycus v. PBGC*, 133 F.3d 1367, 1369 (10th Cir. 1998). The APA contains two different standards of judicial review with regard to administrative determinations. The APA permits a court to set aside an administrative determination only on a showing that the determination is either (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), or (2) "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court," 5 U.S.C. § 706(2)(F). Here, the parties agree that the arbitrary and capricious standard applies.

Under the APA, agency action that is based upon the consideration of relevant factors and that establishes a rational connection between the facts found and the decision made may not be set aside as arbitrary or capricious. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416-17 (1971); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 561 (9th Cir. 2000). The agency's determination is accorded substantial deference, and the reviewing court may not substitute its judgment for the agency's. *Overton Park* at 416; *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1191 (9th Cir. 2000). "Rather, [the Court] will reverse a decision as arbitrary and capricious

only if the agency relied on factors Congress did not intend it to consider, 'entirely failed to consider an important aspect of the problem,' or offered an explanation 'that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ecology Ctr. v. Castaneda*, 574 F.3d 652, 656 (9th Cir. 2009) (quoting *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156 (9th Cir. 2006)).

In this case, where the appropriate standard of review is set forth in APA section 706, summary judgment is an appropriate remedy. *City & County of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997); *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985). The judicial determination as to whether an agency has satisfied the applicable standard is a question of law, and the relevant facts are those contained in the Administrative Record. *San Francisco*, 130 F.3d at 877; *Occidental Eng'g*, 753 F.2d at 769.

## 2.    ERISA Standards

Title IV of ERISA sets forth the rules governing termination of defined benefit plans, including mandatory procedures for terminating covered plans and distributing their assets, as well as termination insurance to pay pension benefits under covered plans that terminate without sufficient assets to pay those benefits. *See* 29 U.S.C. §§ 1301–1461.

The plan termination procedures of Title IV are the exclusive means of terminating a defined benefit pension plan. *See* 29 U.S.C. § 1341(a)(1). Under Title IV, it is the employer who determines whether to terminate a plan, controls the execution of all

plan amendments necessary for termination, and, through its chosen plan administrator, sets the plan's termination date. *See, e.g., Beck v. PACE Int'l Union*, 551 U.S. 96, 101–02 (2007); 29 U.S.C. §§ 1341(a)(2), 1348(a)(1). Title IV also establishes the PBGC and charges it with enforcing and administering that Title's provisions. 29 U.S.C. § 1302.

When an employer decides to terminate a defined benefit pension plan by way of a standard termination, it must first choose a termination date. *See* 29 U.S.C. § 1341(a)(2); 29 C.F.R. § 4041.23. A "plan's termination date is significant in both voluntary and involuntary [pension plan] termination proceedings." *Pension Ben. Guar. Corp. v. Broadway Maint. Corp.*, 707 F.2d 647, 649 (2d Cir. 1983). It is the date on which all benefit accruals cease, and the date all benefits owed to plan participants are determined. *See* 29 U.S.C. § 1341(b)(1)(D) (mandating that plan liabilities be determined as of the plan's termination date); *Pension Ben. Guar. Corp. v. Republic Techs. Int'l, LLC*, 386 F.3d 659, 662 (6th Cir. 2004) (citing *In re Pension Plan for Employees of Broadway Maint. Corp.* (*PBGC v. Broadway Maint. Corp.*), 707 F.2d 647, 649 (2d Cir. 1983)).

The plan administrator must notify all plan participants, beneficiaries, alternate payees, and employee organizations representing plan participants of the plan's termination date and provide them with an explanation of the benefits to which they are entitled. *See* 29 U.S.C. § 1341(a)(2), (b)(1), (b)(2)(B); 29 C.F.R. §§ 4041.23, 4041.24. Before distributing the plan's assets, the administrator must also file the Standard Termination Notice, or PBGC Form 500 ("Form 500") to notify the PBGC of the termination date and provide detailed information about the plan's assets and benefit liabilities. *See* 29 U.S.C. § 1341(b)(2)(A), 29 C.F.R. § 4041.25.

MEMORANDUM DECISION AND ORDER  - 11

Once the PBGC has received the Form 500, the Agency has 60 days to determine whether there is "reason to believe" that the plan has insufficient assets to pay benefit liabilities. 29 U.S.C. § 1341(b)(2)(C). To reach its determination, the PBGC relies, in part, upon the plan administrator's calculation of the actuarial present value of the plan's benefit liabilities as of the proposed termination date. 29 U.S.C. § 1341(b)(2)(A).

If the PBGC determines that there is no reason to believe that the plan has insufficient assets to pay benefit liabilities, the plan administrator must distribute the plan's assets pursuant to Title IV of ERISA. 29 U.S.C. § 1341(b)(2) & (3); 29 C.F.R. § 4041.28.

Administrators generally may distribute benefits to plan participants in the form of annuities or lump-sum payments "in accordance with the provisions of the plan and any applicable regulations." 29 U.S.C. § 1341(b)(3)(A)(ii). A participant's plan benefits "are determined under the plan's provisions in effect on the plan's termination date." 29 C.F.R. § 4041.8.

3.      Discussion

PBGC argues its determination that IHI failed to pay Plan participants their full benefits is reasonable and fully supported by the administrative record. In response, IHI argues PBGC failed to consider important aspects of the problem related to the Plan's termination --- first, that PBGC failed to consider the role and potential liability of the Plan's third-party administrator, First Actuarial Corporation; and second, that PBGC failed to consider the best interests of the Plan's participants, because IHI will be financially insolvent if forced to pay the alleged liability. PBGC contends that neither

MEMORANDUM DECISION AND ORDER  - 12

argument has merit, as IHI was the plan administrator responsible for providing benefits, and IHI's financial health is not ERISA's concern.

Here, the underlying rationale for PBGC's decision is uncontested in the briefing. IHI neither disputes that it underpaid Plan participants, nor the amounts PBGC determined were due. IHI does not assert PBGC failed to interpret statutes or regulations correctly. *See e.g. Pension Ben. Guar. Corp. v. Town & Country Bank & Tr. Co.*, No. 3:11-CV-602-H, 2012 WL 4753352, at *2 (W.D. Ky. Oct. 4, 2012) (employer argued PBGC ignored applicable regulations). Rather, IHI blames the third-party administrator.[4]

Asserting an analogous argument to that asserted by IHI, Town & Country argued PBGC's final determination was unreasonable based upon the facts and circumstances of the case. *Id.* at *3. Town & Country argued that it had sought an IRS determination letter to ensure the termination of its plan would not adversely affect its qualification for favorable tax treatment. The letter was not received for nearly two years, and by that time, financial markets deteriorated, resulting in a marked increase in the amount payable to beneficiaries since the time benefits were computed on the plan termination date. Town & Country attempted to amend its plan to take advantage of more favorable rates, which in turn would have reduced the amount it owed to participants and bring those amounts in line with what it expected to pay as of the date of plan termination. The court

---

[4] IHI's Reconsideration Request argued that the Plan should not be subject to IRC § 411 because all premiums were paid as instructed by the Plan's actuary, First Actuarial Corporation; all available Plan assets were fairly distributed to participants, after taking out expenses and losses the Plan incurred; certain participants should not be fully vested after leaving employment; and generally that some participants, specifically Participant E, agreed to receive a lesser benefit. (AR 2211-17, 2283-2326.) PBGC's Final Determination concluded that IHI's Reconsideration Request provided no defense to PBGC's finding that IHI failed to pay the participants their full benefits in violation of Title IV of ERISA.

**MEMORANDUM DECISION AND ORDER - 13**

upheld PBGC's determination that benefits were to be calculated in accordance with the plan's provision as of the date of termination, and rejected that Town & Country could amend its plan to alter the amounts owed to participants. *Id.* at \*4.

Similarly, in *Powell Valley Nat'l Bank v. PBGC*, No. 2:12CV00018, 2013 WL 4759242 (W.D. Va. Sept. 4, 2013), the employer argued that its third party administrator reasonably interpreted the plan to permit the calculation of benefits as paid. PBGC disagreed, contending that the plan had not been properly amended to take advantage of a statutory change, which would have resulted in a lesser calculation of amounts owed to beneficiaries. Rather, PBGC argued that the employer was required to calculate the benefits on the basis of the plan's existing language, which adopted the former statutory minimum methods of calculation, even though the statute was no longer in force at the time of the plan's termination. The court held that the discretion of the plan administrator was not unfettered, and determinations must follow the plain language of the plan. *Powell Valley*, 2013 WL 4759242 at \*4. Accordingly, the court found that PBGC's decision was not arbitrary or capricious. *Id.* at \*5. *See also PBGC v. Wilson H. Jones Mem'l Hosp.*, 374 F.3d 362 (5th Cir. 2004) (affirming district court's determination that PBGC's finding that employer applied the incorrect interest rate to calculate distribution payments should be upheld).

Applying the rational of *Town & Country* and *Powell Valley*, IHI cannot argue it was the third-party administrator's fault that benefits were not distributed in accordance with the Plan's provisions, especially considering IHI does not dispute PBGC's deficiency calculations or Findings 1 - 4 on any statutory or regulatory grounds. Further,

MEMORANDUM DECISION AND ORDER - 14

ERISA clearly defines the term "administrator" in 29 U.S.C. § 1002(16) as the person so designated by the terms of the instrument under which the plan is operated, and the Plan in turn named IHI as the Plan Administrator. (AR 66.) Thus, while IHI may have relied upon First Actuarial Corporation and others to administer the Plan, no provision in ERISA recognizes that such reliance absolves the named plan administrator from responsibility for correctly terminating a plan and distributing benefits; the Court has found no case law supporting such an interpretation of any ERISA provision applicable here.

PBGC determined IHI received $575,900 in insurance policy surrender checks from MONY, but only $228,884 was paid to the fifteen participants who received a distribution. Yet Title IV of ERISA requires that a pension plan sponsor or administrator pay all participants their full benefits under the Plan and applicable laws. 29 U.S.C. § 1341(b). For a section 412(e) plan like IHI's, which was fully and solely funded by insurance policies, the pension plan sponsor or administrator must pay all participants the full cash surrender value of their insurance contracts. 26 U.S.C. § 411(b)(1)(F). Failure to do so violates the requirement that plan assets be used exclusively for the benefit of participants until all benefit liabilities are satisfied. 26 U.S.C. § 401(a)(2) and 29 U.S.C. § 1103(c)(1).

PBGC's Final Determination upheld its Initial Determination on the grounds that (1) IRC § 411(b)(1)(F) specifically requires that a participant's accrued benefit in a 412(e)(3) plan be at least the cash surrender value of their insurance contracts of any applicable date; (2) ERISA § 4041(b)(3) requires all benefits liabilities to be paid upon a

standard termination and does not allow for expenses or losses by the plan to be deducted from a participant's benefits; (3) IRC § 401(a)(2) and ERISA § 403(c)(1) requires that Plan assets be used exclusively to the benefit of participants until all benefits liabilities are satisfied; (4) IRC § 411(d)(3) requires that the nonvested portion of benefits of all affected participants, including terminated participants who have not yet incurred a five year break in service, become non-forfeitable on the date of the Plan termination; and (5) IHI provided no documentation showing that a participant waived her benefit or that she was a majority owner eligible to waive her benefit under 29 C.F.R. § 4041.2. Under the circumstances presented here, the Court finds PBGC's order was not arbitrary and capricious.

In the cases cited above and that the Court reviewed, PBGC's determinations undoubtedly worked a hardship upon the employers.[5] They ended up owing more to plan participants under PBGC's determination than anticipated. Here, IHI should have anticipated it would owe plan participants the full amount of the cash surrender value of the MONY insurance contracts. That the plan administrator interpreted otherwise, or believed IHI could distribute less, and the fact that PBGC's determination will work a financial hardship upon IHI in order to comply, is not a sufficient reason to overcome PBGC's rational interpretation and application of the statutory rules governing plan termination and distribution of benefits.[6]

---

[5] It would defy common sense for a plan administrator to contest a determination that it owed less than what was distributed.

[6] There is support in the record that IHI used the money it received from MONY, and which it did not distribute to plan participants, for its own purposes to support its ongoing operations, which were in financial trouble. IHI sought also to recoup losses suffered by the Plan itself, and based its distribution to

## CONCLUSION

IHI, as the Plan Administrator, is the party responsible for the proper termination of the Plan under title IV of ERISA. Upon review of the Administrative Record, the Court finds that it supports PBGC's Final Determination, and that PBGC did not act arbitrarily or capriciously.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion for Summary Judgment (Dkt. 51) is **GRANTED**.

2) PBGC is to submit a proposed form of judgment.

DATED: May 4, 2018

Honorable Candy W. Dale
United States Magistrate Judge

---

plan participants on the amounts IHI contributed to fund the Plan. (*See* email correspondence, AR 2304 – 2319; 2320 – 2329.) IHI confirmed at the hearing that IHI used the money to keep the business afloat.